# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| GLOBAL ENERGY HOLDINGS GROUP, INC., *et al.*,[1] | ) | Case No. 09-14192 (PJW) (Jointly Administered) |
|  | ) |  |
| Debtors. | ) | **Proposed Hearing Date:** |
|  | ) | **Proposed Objection Date:** |

## LIQUIDATING TRUSTEE'S MOTION FOR ORDERS: (I) APPROVING BID PROCEDURES, BREAK-UP FEE, OVERBID PERCENTAGE IN ADVANCE OF AUCTION FOR SALE OF AUGUSTA REAL PROPERTY AND RELATED ASSETS; (II) SETTING A FINAL HEARING FOR APPROVAL OF THE SALE; (III) APPROVING MANNER AND FORM OF NOTICE OF SALE; (IV) APPROVING THE SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, PURSUANT TO SECTION 363; (V) MAKING SECTION 363(m) AND 363(n) FINDINGS IN FAVOR OF PURCHASER; (VI) WAIVING FOURTEEN-DAY STAY PERIOD PROVIDED BY BANKRUPTCY RULE 6004(h); (VII) FINDING SALE EXEMPT FROM STAMP TAX AND SIMILAR TAXES; AND (VIII) GRANTING RELATED RELIEF

Robert L. Franklin, in his capacity as Liquidating Trustee (the "Trustee"), by and through his attorneys, in the above-referenced cases, hereby moves the Court (the "Motion"), pursuant to Sections 105(a), 363, 1129, 1141, and 1146 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1; 9013-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules") for entry of final orders: (I) approving bid procedures, break-up fee, overbid percentage and notice in advance of an auction for the sale of real property and related assets located in Augusta, Georgia; (II) setting a final hearing for approval of the sale of the property to the purchaser; (III) approving manner and form of notice of sale; (IV) approving the sale of the property free and clear of all liens, claims, encumbrances, and other interests; (V) making

---

[1] The debtors in the chapter 11 cases are: (i) Global Energy Holdings Group, Inc.; (ii) Augusta Biofuels, LLC; (iii) Spring Hope Biofuels, LLC; (iv) Xethanol Biofuels, LLC; and (v) GES Live Oak – Hickory Ridge, LLC. (hereafter, collectively, the "Debtors").

section[2] 363(m) and Section 363(n) findings in favor of purchaser; (VI) waiving the fourteen-day stay period provided by Bankruptcy Rule 6004(h); (VII) finding the sale of the property is not subject to being taxed under any law imposing a stamp tax or similar tax, in accordance with Section 1146(a); and (VIII) granting related relief.

In support of this Motion, the Trustee respectfully states as follows:

## JURISDICTION AND VENUE

1.      On November 25, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition under chapter 11 of the Bankruptcy Code.

2.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157(a) and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S. C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are Sections 105, 363, 1129, 1141, and 1146 of the Bankruptcy Code.

## BACKGROUND

3.      On or about June 29, 2010, the Debtors filed with the Court the Amended Chapter 11 Plan of Reorganization of Global Energy Holdings Group, Inc., Augusta Biofuels, LLC, Spring Hope Biofuels, LLC, Xethanol Biofuels, LLC, and GES – Live Oak Hickory Ridge, LLC (the "Plan").

4.      On October 26, 2010, the Court confirmed the Plan entering Findings of Fact, Conclusions of Law and Order Confirming Amended Chapter 11 Plan of Reorganization of Global Energy Holdings Group, Inc., Augusta Biofuels, LLC, Spring Hope Biofuels, LLC, Xethanol Biofuels, LLC, and GES – Live Oak Hickory Ridge, LLC (the "Confirmation Order").

---

[2] In this Motion, the terms "Section" and "§" shall refer to the Bankruptcy Code unless otherwise stated.

2

5.      On or about January 26, 2011 the Plan went effective (the "Effective Date").

From the Petition Date through the Effective Date of the Plan, the Debtors managed their

businesses as debtors in possession in accordance with Sections 1107 and 1108.

6.      As of the Effective Date, the Trustee was appointed pursuant to the Plan and the

Confirmation Order.  Pursuant to Article III Section D.2., Robert L. Franklin was appointed

Trustee to oversee all designated matters post-Effective Date.

7.      Pursuant to the Plan, all assets of any of the Debtors existing as of the Effective

Date were vested in the Liquidating Trust, which the Trustee oversees.

8.      Pursuant to Article III Section D.2.(b) of the Plan, the Trustee's authority includes

administering, preserving and liquidating the Liquidating Trust's assets.

9.      Article IV C. of the Plan provides:

> As of the Effective Date, all Property that vests in the Liquidating Trust
> shall be free and clear of all Claims, Liens, encumbrances and other
> interests of creditors and holders of Equity Interests, except as otherwise
> provided herein.

10.     Article VII (c) of the Plan provides:

> Except as may otherwise be provided in the Plan, on the Effective Date,
> all credit agreements, promissory notes, mortgages, security agreements,
> invoices, contracts, agreements, and any other documents or instruments
> evidencing Claims against the Debtors, together with any and all Liens
> securing same, shall be cancelled, discharged, and released without further
> act or action by any Person under any applicable agreement, law,
> regulation, order, or rule, and obligations of the Debtors thereunder shall
> be deemed cancelled, discharged, and released.  To the extent deemed
> necessary or advisable by the Debtors, any holder of a Claim shall
> promptly provide the Debtors with an appropriate instrument of
> cancellation, discharge, or release, as the case may be, in suitable form for
> recording wherever necessary to evidence such cancellation, discharge, or
> release, including the cancellation, discharge, or release of any Lien
> securing such Claim.

{W2361671.3}

## THE PROPERTY TO BE SOLD

11.     Prior to the Effective Date, one of the Debtors, Augusta Biofuels, LLC, owned a former pharmaceutical manufacturing complex located in Augusta, Georgia. The Debtors had decided that the Augusta facility did not fit within their long-term corporate strategy and had pursued the sale of the facility. Pursuant to the Plan and Confirmation Order, title to the Augusta facility was vested in the Liquidating Trust as of the Effective Date.

12.     Pursuant to the Contract for Purchase and Sale of Real and Personal Property (the "Contract"), the Trustee seeks authority to sell to DSM Chemical North America, Inc. ("DSM"), all of his right, title and interest associated with the former manufacturing facility located in Augusta, Georgia, with such sale being free and clear of all liens, claims, encumbrances, and other interests resulting from the Debtors' or Liquidating Trust's ownership and with any such liens, claims, encumbrances, and other interests attaching to the proceeds of the sale in the same order of priority as in the underlying property being sold. The property being sold to DSM consists of two tracts of real property situated in Augusta-Richmond County, Georgia, comprised of approximately 40.88 acres, more or less and all associated improvements (the "Real Property"), all associated personal property located on the Real Property to which the Trustee holds title and all associated intangible property (the "Personal Property") (collectively with the Real Property and Personal Property, the "Property"). A copy of the Contract which describes the Property in further detail is attached hereto as Exhibit A.

### The Marketing Efforts

13.     The Debtors, using their business judgment to pursue a disposition of the Property, engaged in prepetition and postpetition marketing of the Property in an effort to ascertain the highest and best value. During the pendency of the Chapter 11 cases, the Debtors, and more recently the Trustee, undertook various marketing efforts related to the Property, which included the engagement of Grubb & Ellis Company ("Grubb & Ellis") as their real estate broker in order to perform a full

4

{W2361671.3}

marketing effort for the Property.  In this regard, Grubb & Ellis developed a marketing flyer designed to notify all real estate professionals in Augusta, Atlanta, and Evans, Georgia, and surrounding areas of the sale of the Property.  The flyer has thus far been distributed electronically to approximately 4,000 real estate individuals and companies.  The flyer has also been sent to everyone owning or occupying real estate on Lovers Lane in Augusta, Georgia where the Property is located, all land users in Augusta in the 15-30 acre brackets of the Real Property, both golf cart manufacturers, Solo Cup, Lillie Cup, all of the top 50 manufacturers in Augusta, every chemical company in the region and every pharmaceutical company in the area.

14.    Following the circulation of the flyer, a complete package for sale of the Property was developed.  This package contains maps, plats, list of buildings and their services, full description of demographics, and area information, as well as aerial and interior/exterior property photos.  These packages were hand delivered to every company on Lovers Lane.  Other packages went to real estate firms, economic development people, the mayor's office, and various other parties.  The process of calling in person to anyone who voiced any interest was undertaken.  As a result of these efforts, Grubb & Ellis presented the Trustee with an offer from DSM to purchase the Property.

### The Proposed Sale of the Property and Stalking Horse Bid

15.    DSM has agreed to serve as the stalking horse bidder for the Property at the Auction (as defined below) with an initial bid of $2,500,000 in accordance with the Contract (the "Stalking Horse Bid").

16.    The following summarizes some of the more salient terms of the proposed Contract[3] and the Bid Procedures (as herein defined):

---

[3] To the extent of a conflict or inconsistency exists between this Motion and the Contract, the Contract shall control.

{W2361671.3}

A.      **The Sale**

Transaction;                              DSM will acquire the Property free and
                                          clear of all liens, claims, encumbrances, and other
                                          interests, resulting from the Debtors' or the
                                          Liquidating Trust's ownership.

Consideration;                            $2,500,000.

Assumed Liabilities;                      Any matters relating to the Property, except as
                                          otherwise limited by the Contract.

Conditions Precedent to Closing:          The following are certain of the conditions
                                          precedent to the closing:

                                          (1)     The Trustee will convey to DSM good and
                                          marketable fee simple title in and to the Real Property, free
                                          of all defects, claims, liens, encumbrances, and other
                                          interests of any kind or nature whatsoever resulting from
                                          the Debtors' or the Liquidating Trust's ownership interest,
                                          other than Permitted Exceptions (as defined in Contract),
                                          and the title shall be insurable by the designated title
                                          company at then current standard rates under standard form
                                          of extended coverage ALTA owner's policy;

                                          (2)     An order entered by the Court, which has not been
                                          reversed, stayed, annulled or modified approving: (a) the
                                          terms of the Contract, (b) the sale of the Property free and
                                          clear of all liens, claims, encumbrances, and other interests,
                                          resulting from the Debtors' or the Liquidating Trust's
                                          ownership interest; and

                                          (3)     A closing on the sale of the Property to DSM on or
                                          before July 1, 2011 at 11:00 a.m., prevailing Eastern Time,
                                          unless otherwise extended under the terms of the Contract.

The full terms and conditions of the proposed transaction are set forth in the Contract and

reference should be made to the Contract for additional terms.

B.      **Bid Procedures.** In accordance with Section 5 of the Contract, the

Trustee proposes that the Court approve the following specific bidding procedures (the

"Bid Procedures"), as further described below:

                                          (1)     *Potential Bidder.* Parties interested in participating in the bidding
                                          process (each person other than DSM, a "Potential Bidder") will be
                                          required to deliver to the Trustee (to the extent not already delivered) the

6

{W2361671.3}

following prior to the commencement of due diligence and/or participation in the Auction:

> (a)    An executed confidentiality agreement in form and substance acceptable to the Trustee; and
>
> (b)    The most current financial information evidencing the Potential Bidder's ability to close the transaction on or before July 1, 2011, and that otherwise meets with the Trustee's satisfaction (the "Financial Information").

(2)    As promptly as practical after a Potential Bidder delivers the above information, the Potential Bidder shall be eligible to commence due diligence with respect to the Property, as defined in the Contract. The Trustee reserves the right to refuse any Potential Bidder access to the due diligence if such access is deemed to be harmful to the Property.

(3)    *Deadline for Submission of Bids.* The deadline for submitting any and all competing bids for the Property shall be **on or before June 23, 2011, at 5:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline").

(4)    *Submission of Bids.* In order to qualify as a Qualified Bidder (as herein defined) of the Property, a Potential Bidder must timely submit to the Trustee a written bid (a "Qualified Bid") for the Property that contains:

> (a)    An executed Contract for the Sale and Purchase of Real and Personal Property in substantially the same form as the Contract, with all modifications which shall be no less favorable than those set forth in the Contract (a "Modified Contract").
>
> (b)    The Modified Contract shall be accompanied by a blacklined copy of the Modified Contract showing all changes made to the Contract.
>
>> (i)    The Modified Contract shall not contain:
>>
>>> (A)    A request for any type of break-up fee, expense reimbursement, or similar type of payment; or
>>>
>>> (B)    Any due diligence, financing contingencies, or other contingency of any kind.
>
> (c)    Evidence of authorization and approval from such Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the Contract or the Modified Contract, as the case may be.
>
> (d)    Information regarding such Potential Bidder's financial capability to timely consummate the transactions contemplated by the Modified Contract, containing such financial and other information that will allow the Trustee to make a reasonable determination as to the Potential Bidder's financial and other

capabilities to timely consummate the transactions contemplated by the Modified Contract, as the case may be, including, without limitation:

(i)   The most current Financial Information of such Potential Bidder; or

(ii)   If the Potential Bidder is an entity formed for the purpose of acquiring the Property, then:

(A)   The Financial Information of the equity holder(s) of the Potential Bidder or such other form of financial disclosure acceptable to the Trustee;

(B)   The written commitment of such equity holder(s) to be responsible for the Potential Bidder's obligations in connection with the acquisition of the Property; and

(C)   Full disclosure to the Trustee of the identity of each entity that will be bidding for the Property or otherwise participating in connection with the Qualified Bid, and the complete terms of any such participation.

(e)   A bid in an amount of at least $2,675,000 cash (which represents 5% above the current Stalking Horse Bid) payable in full at the closing, on or before July 1, 2011;

(f)   A cash deposit (the "Deposit") in an amount equal to at least $267,500.00, to be received by the Bid Deadline; and

(g)   The Modified Contract shall be delivered such that it is received by the Bid Deadline (5:00 p.m. prevailing Eastern Time, on June 23, 2011) by the Trustee's counsel, Attn: Gayle P. Ehrlich, Pierce Atwood LLP, 100 Summer Street, Suite 2250, Boston, MA 02110, email: gehrlich@pierceatwood.com, fax: (617) 824-2020.

(5)   *Qualification of Bid.* After a Potential Bidder has delivered a bid, the Trustee will determine whether such Potential Bidder is a "Qualified Bidder" and such bid is a "Qualified Bid." Promptly after making such determination, the Trustee will advise such Potential Bidder of this determination. DSM is deemed a Qualified Bidder.

(6)   *Auction.* In the event that one or more Qualified Bids are timely received, the Trustee will conduct an auction (the "Auction") to determine the highest and best cash bid for the Property, beginning at **Noon (prevailing Eastern Time) on June 27, 2011,** at the law offices of Archer & Greiner, P.C., 300 Delaware Avenue, Suite 1370, Wilmington, Delaware 19801. The Auction may be adjourned by announcement of the adjournment of the Auction to those parties who appear at the Auction. The bid by DSM shall constitute the

{W2361671.3}

Stalking Horse Bid at the Auction. Each Qualified Bid other than the Stalking Horse Bid is referred to as a "Subsequent Bid"). If the Trustee does not receive any Qualified Bids other than the Stalking Horse Bid, then the Trustee will sell the Property to DSM pursuant to the Contract.

(7)    *Auction Procedures.*  In the event an Auction is necessary, such Auction will be conducted as follows:

(a)    Only the Trustee and any Qualified Bidder who has timely submitted a Qualified Bid (and the legal, business, and financial advisers to each of the foregoing) may attend the Auction, and only Qualified Bidders (and authorized representatives of the foregoing) may make Subsequent Bids at the Auction.

(b)    At least one (1) business day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Trustee whether it intends to participate in the Auction. Failure to comply with this provision may preclude an otherwise Qualified Bidder from attending and/or participating in the Auction.

(c)    All Qualified Bidders who have submitted a Qualified Bid shall be entitled to be present for all Subsequent Bids, with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each of the Subsequent Bids will, upon request, be fully disclosed to all other bidders throughout the entire Auction.

(d)    All Qualified Bidders or their representatives shall agree to remain ready, willing, and able to close the transaction under the terms of its last Qualified Bid.

(e)    The Trustee may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bid Procedures, the Bankruptcy Code, or any order entered in connection herewith.

(f)    Bidding at the Auction shall begin with the Stalking Horse Bid, followed by any and all other Qualified Bids received by the Trustee. All subsequent bidding at the Auction shall be in minimum increments of at least $50,000.00 higher than the highest previous bid or bids. The Auction shall continue in one or more rounds of bidding and shall conclude after the point in time when each participating bidder has had the opportunity to submit one or more additional Subsequent Bids with full knowledge of the then-existing highest bid or bids.

(8)    *Determination of Winning Bid.*  At the conclusion of the Auction, the Trustee shall determine the winning bidder (the "Winning Bidder"). In determining the Winning Bidder, the value of any Qualified Bid shall be determined by comparing, among other things

9

(i) the type, number and nature of changes to the Contract by each such Qualified Bidder, (ii) the extent to which such modifications are likely to delay the closing of the sale of the Property, (iii) the likelihood of the Qualified Bidder's ability to close the transaction (including consideration of the Qualified Bidder's financial wherewithal), (iv) the type and amount of consideration to be received by the Liquidating Trust, and (v) the net benefit to the Liquidating Trust.

(9)     In the event that a Qualified Bidder other than DSM is the Winning Bidder then DSM shall receive payment from the Trustee of a break-up fee on the date the sale is consummated from the proceeds of such sale, in an amount equal to the lesser of: (x) five percent (5%) of the Purchase Price (as defined in the Contract) and (y) all actual out-of-pocket costs and expenses paid or incurred by DSM in connection with its execution of and entry into the Contract and its proposed acquisition of the Property, including, without limitation, (i) attorneys' fees and disbursements in connection with the negotiation and execution of the Contract, the examination of title to the Property, and any other legal matter undertaken by or on behalf of DSM pertaining to the Property, and (ii) any examinations, investigations, tests and inspections, undertaken by or on behalf of DSM with respect to the Property (the "Termination Fee").

(10)    *Final Hearing.* To the extent that a final hearing is required to consider the sale of the Property, the Court will schedule a hearing to approve the transaction (the "Final Sale Hearing") on June 28th at Noon, (prevailing Eastern Time). All objections to the transaction shall be filed with the Bankruptcy Court and served on all necessary persons at least two (2) business days prior to the Final Sale Hearing.

(11)    *Closing.* Unless otherwise agreed to in writing by the Trustee, the Closing shall take place on **July 1, at 11:00 a.m. (prevailing Eastern Time)** at the offices of Randall D. Quintrell, P.C., 999 Peachtree Street, NE, 23rd Floor, Atlanta, Georgia 30309-3996 (the "Closing Date").

(12)    *Return of Deposits.* The Deposits of all Qualified Bidders, including DSM, shall be held in a non-interest-bearing escrow account. Notwithstanding the foregoing, the Deposit, if any, submitted by the Winning Bidder shall be applied against the payment of the purchase price upon closing of the transaction. Except as otherwise provided in the Contract or Modified Contract and herein, all Deposits shall be returned to each Qualified Bidder not selected by the Trustee as the Winning Bidder within ten (10) business days after the Final Sale Hearing.

## Summary of Timeline

17.     The Trustee has formulated the following timeline to effectuate the transaction contemplated herein, and seeks hearings and deadlines to be set as follows:

{W2361671.3}

| Case Day | Activity/Deadline |
| --- | --- |
| On or before May 24, 2011 | Hearing on bid procedures, break-up fee, overbid and notice portion of the Motion |
| | Objections due May 23rd 2011 at Noon. EDT |
| June 23, 2011 | Qualified bid and Objection deadline |
| June 27, 2011 | Auction |
| June 28, 2011 | Final Sale Hearing Objections due June 23, 2011 at 12:00 p.m. EDT |
| On or before July 1, 2011 | Closing on transaction |

## RELIEF REQUESTED

18.     By this Motion, the Trustee respectfully requests that this Court set a hearing to consider and approve the Bid Procedures, including DSM's proposed Termination Fee and the overbid percentage and notice procedures set forth in the Motion on May 24, 2011 (with an objection deadline of May 23, 2011, at Noon EDT).  The Trustee, through this Motion, also requests the entry of two orders.  The first order, substantially in the form of the Bid Procedures Order, attached hereto as Exhibit B, seeks: (i) approval of the Bid Procedures, including DSM's proposed Termination Fee, the overbid percentage and notice procedures set forth in the Motion, including the timeline and deadlines set forth herein; (ii) approval of the Notice of Auction and Sale Hearing, attached hereto as Exhibit C; (iii) approval of the requirement that Qualified Bids must be submitted by June 23, 2011; and (iv) scheduling of an Auction of the Property to take place on June 27, 2011.  The Trustee further requests that the Court enter a separate Sale Order, substantially in the form attached hereto as Exhibit D;(a) approving the terms of the form of Contract between the Trustee and DSM; (a) authorizing the sale of the Property, free and clear of liens, claims, interests and

11

encumbrances resulting from the Debtors' or Liquidating Trust's ownership, subject to

higher and better offers, pursuant to Bankruptcy Code Section 363, to DSM or the Winning

Bidder with Section 363(m) and 363(n) and otherwise applicable findings of good faith being

made in favor of DSM or the Winning Bidder; (b) waiving the fourteen-day stay period

provided by Bankruptcy Rule 6004(h); (c) finding that the sale of the Property is exempt from

any applicable stamp tax or similar tax in accordance with Section 1146(a) of the Bankruptcy

Code; and (d) granting such other and further relief as is just and proper.

### BASIS FOR RELIEF REQUESTED

#### Pursuant to Section 363(b) of the Bankruptcy Code

19.    Section 363(b)(l) of the Bankruptcy Code provides, in relevant part, that "[t]he

trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of

business, property of the estate." 11 U.S.C, § 363(b)(l).  Although Section 363 of the

Bankruptcy Code does not specify a standard for determining when it is appropriate for a

court to authorize the use, sale or lease of property of the estate, bankruptcy courts routinely

authorize sales of property of a debtor if such sale is based upon the sound business judgment

of the debtor.  In re Dura Automotive, 2007 Bankr. LEXIS 2764 at * 258, citing Myers v.

Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); Comm. of Equity Sec. Holders v.

Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983); In re Abbotts Dairies

of Penn., Inc., 788 F.2d 143 (3d Cir. 1986) (implicitly adopting the "sound business judgment"

test of Lionel Corp. and requiring good faith); In re Delaware and Hudson Ry. Co., 124 B.R.

169 (D. Del, 1991) (concluding that the Third Circuit adopted the "sound business judgment"

test in the Abbotts Dairies decision); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153

(D. Del. 1999) (same).

20.    In the circumstances of valid business justifications, applicable principles of

law attach to a debtor's decision a strong presumption "that in making a business decision[,]

{W2361671.3}

the directors of a corporation acted on an informed basis, in good faith and in the honest belief

that the action taken was in the best interests of the company," Official Comm. of Sub.

Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.). 147 B.R. 650, 656 (S.D.N.Y.

1990) (holding that the Delaware business judgment rule has "vitality by analogy" in chapter 11,

especially where the debtor is a Delaware corporation and that overbid procedures and break-up

fee arrangements that have been negotiated by debtor in possession are reviewed according to that

standard) (quotations omitted).  In this District, once a court is satisfied that there is a sound

business justification for the proposed sale, the court must then determine whether (i) the debtor in

possession or, as here, the Trustee, has provided interested parties with adequate and reasonable

notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in good

faith. In re Delaware and Hudson Ry. Co., 124 B.R. at 166; accord In re Decora Indus., Inc.,

2002 WL 32332749 at *3 (Bankr. D. Del. May 20, 2002).

     21.    The Trustee submits that the decision to sell the Property in the manner set

forth herein is based upon his sound business judgment and should be approved.  Prior to the

Petition Date, the Debtors worked diligently to explore alternatives to a sale.  However, the

Debtors having filed petitions for bankruptcy relief and following entry of the Confirmation

Order, the Trustee has determined that the sale of the Property is the only alternative.  The

Trustee believes that the sale of the Property is in the best interests of the beneficiaries of the

Liquidating Trust and all parties in interest.

     22.    In addition, the Trustee believes that the marketing efforts, arms-length

negotiations with potential purchasers, and the proposed Bid Procedures, including the

selection of DSM as the stalking horse bidder for the Property and authorization of payment

of the Termination Fee, will achieve the best results for the Liquidating Trust and maximize

value for all constituents.  The Bid Procedures contemplate an open auction process with

minimum barriers to entry, and are designed to ensure that the ultimate purchase price of the

13

Property is fair and reasonable. Thus, the Trustee submits that the sale of the Property is within his sound business judgment.

## Sale Hearing

23.    By this Motion, Trustee seeks the scheduling of the Final Sale Hearing to consider approval of the sale of the Property to any Winning Bidder, on June 28, 2011, at Noon.

## Approval of Form and Manner of Service of Notice of the Sale

24.    Notice of the hearing on the Motion and the Bid Procedures will be served by first-class mail upon A) United States Trustee's Office of the District of Delaware; B) all persons who have entered an appearance in the Debtors' cases; C) all creditors of the Debtors; D) the members of the Post-Confirmation Committee appointed pursuant to the Plan; E) those entities known to have expressed an interest in purchasing the Property within the last 180 days; F) each of the thirty-one largest manufacturing employers in Augusta, Georgia, and G) all creditors or other parties having a lien, claim, encumbrance, or other interest in any of the Property. As set forth in the notice of sale of the Property, which is attached hereto as <u>Exhibit C</u> persons desiring to object to this Motion must file with the Bankruptcy Court and serve upon the Trustee's counsel an objection by no later than June 23, 2011 at 5:00 p.m.. If timely objections are received, the Court will consider the objections at the Final Sale Hearing.

25.    The Trustee submits that the notice proposed with respect to the sale of the Property is reasonably calculated to provide timely and adequate notice to the Debtors' creditors and parties in interest and those parties interested in bidding on the Property. Accordingly, the Trustee submits that such notice constitutes good and sufficient notice under the circumstances with respect to this Motion, all proceedings to be held hereon, and the entry of the order or orders granting all of the relief requested herein and that no further notice need be given.

## Sale Free and Clear of Liens, Claims, Encumbrances and Other Interests

26.    The Trustee seeks authorization from the Court to sell the Property, in

14

accordance with Section 363 of the Bankruptcy Code free and clear of all liens, claims,

encumbrances, and other interests, resulting from the debtors' or Liquidating Trsuts's

ownership of the Property with any and all liens, claims, encumbrances, and other interests to

attach to the net proceeds from the sale of the Property in the same order of priority and with

the same validity as in the underlying Property.

      27.     The sale of the Property satisfies the requirements of Section 363(f) of the

Bankruptcy Code.  Under Section 363(f) of the Bankruptcy Code, a trustee may sell all or any

part of its property free and clear of any and all liens, claims, encumbrances and interests of an

entity in such property if:

(1)   applicable nonbankruptcy law permits sale of such property free and clear of such
interest;
(2)   such entity consents;
(3)   such interest is a lien and the price at which such property is to be sold is greater
than the aggregate value of all liens on such property;
(4)   such interest is in bona fide dispute; or
(5)   such entity could be compelled, in a legal or equitable proceeding, to accept a
money satisfaction of such interest.

See 11 U.S.C. § 363(f); In re Kellstrom Indus., Inc., 282 B.R. 787, 793-96 (Bankr. D. Del. 2002)

(Section 363(f) is written in the disjunctive; the court approved the sale "free and clear" where

only one of the five subsections of Section 363(f) were met).

      28.     To satisfy Section 363(f) of the Bankruptcy Code, a debtor, trustee, or other estate

representative (such as the Trustee) need only satisfy one of the five conditions set forth above.

Pursuant to Section 363(f)(3) of the Bankruptcy Code, the Trustee may sell the Property free and

clear of any interest if "such interest is a lien and the price at which such property is to be sold is

greater than the aggregate value of all liens on such property." 11 U.S.C. § 363(f)(3). "In order

for a trustee to sell property free and clear of liens and encumbrances under 11 U.S.C. §

363(f)(3), the sale price must be greater than the total value of the liens on the property." In re

Cramer, 295 B.R. 397, 398 (Bankr. S.D. Fla. 2003); In re Feinstein Family P'ship, 247 B.R. 502,

{W2361671.3}

509 (Bankr. M.D. Fla. 2000) (under Section 363(f)(3) of the Bankruptcy Code all valid liens encumbering the property must be satisfied). At this time, the Trustee believes there are no liens, claims, encumbrances, or other interests on any of the Property. Because the proposed purchase price for the Property is $2,500,00.00, the purchase price is greater than the aggregate value of any liens, claims, encumbrances, and other interests in and to the Property.

29.    The sale of the Property contemplated by this Motion satisfies the foregoing requirements. Accordingly, the Trustee submits that the Court should approve the sale of the Property, pursuant to Section 363 of the Bankruptcy Code, free and clear of all liens, claims, interests, and encumbrances, with any such liens, claims, interests, and encumbrances to attach to the net proceeds of the sale with the same validity and in the same order of priority as in the underlying Property.

**Approval of Form of Sale Order**

30.    As set forth above, and in addition to the relief sought by the Trustee contained in the Bid Procedures Order, the Trustee also seeks entry of a Sale Order, in substantially the form attached hereto as Exhibit D, that shall provide, among other things: (a) that the transfer of the Property by Trustee to the Winning Bidder (i) is or will be a legal, valid and effective transfer of the Property, (ii) vests or will vest in the Winning Bidder good title to the Property free and clear of any and all liens, claims, interests and encumbrances resulting from the Debtors' or the Liquidating Trust's ownership in accordance with Section 363 of the Bankruptcy Code, except those expressly assumed by the Winning Bidder, (iii) constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and applicable law; (b) that all persons having a lien, claim, interest or encumbrance against the Property resulting from the Debtors' or Liquidating Trust's ownership are forever barred, estopped and permanently enjoined from pursuing any such liens, claims, interests and encumbrances against the Winning Bidder, any of its assets, property, successors or assigns or the Property, except with respect to

{W2361671.3}

the liabilities expressly assumed by the Winning Bidder in the Contract; (c) that the transactions contemplated by the Contract are and were undertaken in good faith, as that term is defined pursuant to Section 363(m) of the Bankruptcy Code; (d) that neither DSM (or the Winning Bidder, if not DSM) nor the Trustee has engaged in any conduct that would cause or permit the Contract to be avoided pursuant to Section 363(n) of the Bankruptcy Code; and (e) that the Contract or other asset purchase agreement submitted by the Winning Bidder is approved.

31.     The Trustee requests that the Bankruptcy Court determine that objections, if any, to this Motion and to entry of the Sale Order shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules and orders of this Court, shall set forth: (i) the nature of the objector's claims against or interests in Debtors' estates; (ii) the basis for the objection, (iii) the specific grounds therefor, and (iv) all evidence in support of said objection, and shall be filed and served so as to be received on or before June 23, 2011 at 5:00 p.m. by: (a) the Trustee, (b) the United States Trustee, and (c) all parties requesting service of notice and other motions and pleadings in these chapter 11 cases.  If any Qualified Bidder objects to Trustee's determination of a Qualified Bid as a higher and better bid for the Property, the sole and exclusive remedy of such Qualified Bidder shall be to bid under protest at the Auction and, upon compliance with this paragraph, have standing at the Final Sale Hearing to contest the Trustee's determination.

**Trustee's Authority**

32.     The Trustee has authority to proceed with the sale to DSM or another successful purchaser pursuant to the Plan and Liquidating Trust Agreement.  The provisions of the Liquidating Trust are incorporated into the Plan by reference.

33.     Pursuant to the Liquidating Trust, the Trustee is authorized to:

   (a) Accept and hold legal title to any and all rights of the Settlor (the

        "Debtors") and the Beneficiaries (the holders of allowed claims) (See

        Section 3.1.1)

17

{W2361671.3}

(b) Sell assets of the Liquidating Trust for the benefit of the Liquidating Trust at public or private sale…by order of the Bankruptcy Court, with respect to discrete assets having a sale price of $25,000 or more (See Section 3.1.12)

(c) Enter into agreements binding upon the Liquidating Trustee and on the Liquidating Trust and execute, acknowledge and deliver any and all instruments which are necessary, required or deemed advisable by the Liquidating Trustee, in each case, in connection with the performance of his or her duties under the Contract of Liquidating Trust (See Section 3.1.21)

(d) Exercise any rights and powers provided to the Liquidating Trustee under the Plan or the Confirmation Order (See Section 3.1.25)

**Winning Bid Granted Protections Under Section 363(m) of the Bankruptcy Code and not Subject to Avoidance under Section 363(n) of the Bankruptcy Code**

34.    Section 363(m) of the Bankruptcy Code protects the sale of property to a good faith purchaser.  Section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11. U.S.C. § 363(m).  Although the Bankruptcy Code does not define "good faith," the Court of Appeals for the Third Circuit has noted that the phrase "encompasses one who purchases in 'good faith' and 'for value.'" In re Abbotts Dairies of Pa., Inc., 788 F,2d 143, 147 (3d Cir. 1986).  In addition, Section 363(m) "fosters the 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" Pitt. Food & Beverage, Inc. v. Ranallo, 112 F.3d 645, 647-48 (3d Cir. 1997).

18

35.     The selection of the Winning Bidder will be the product of arms-length, good-faith negotiations that resulted from an open and comprehensive marketing and auction process.  Accordingly, the Trustee intends to request at the Final Sale Hearing a finding that the Winning Bidder is a good-faith purchaser entitled to the protections of Section 363(m) of the Bankruptcy Code.

36.     Neither DSM (nor the Winning Bidder, if not DSM) nor the Trustee has engaged in any conduct that would cause or permit the Contract to be avoided pursuant to Section 363(n) of the Bankruptcy Code.  Accordingly, the Contract is not subject to avoidance under Section 363(n) of the Bankruptcy Code.

**The Termination Fee is Reasonable and Appropriate**

37.     Bidding incentives, such as the Termination Fee for DSM, encourage potential purchasers to invest the necessary time, money and effort to negotiate with a debtor, or, in this case, the Trustee, and to perform the required due diligence relating to the acquisition of property of a debtor's bankruptcy estate (or, as here, the Liquidating Trust).  Courts have found that such incentives serve to compensate the prospective purchaser for its assumption of the inherent risks and uncertainties of the bankruptcy process.  See In re SNA Nut Co., 186 B.R. 98, 101 (Bankr. N.D. Ill. 1995) ("Agreements to provide breakup fees or reimbursement of fees and expenses are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers.").

38.     Bidding incentives like the Termination Fee should be approved when they are found to be in the best interests of a debtor's estate.  See In re America West Airlines, Inc., 166 B.R. 908 (Bankr. D. Ariz. 1994); In re Hupp Indus., Inc., 140 B.R. 191 (Bankr. N.D. Ohio 1992).  Under Third Circuit law, the moving party must show that the bidding incentives not only provide some benefit to a debtor's estate, but also meet the administrative expense standards of Section 503(b) of the Bankruptcy Code.  See In re Reliant Energy Channelview

19

LP, 594 F.3d 200, 206-09 (3d Cir. 2010).

39.    In the case at bar, the Termination Fee will be paid only in the event that the Property is sold to a purchaser that has entered a Qualified Bid that the Trustee determines is a higher and better offer than the offer of DSM for such property, as reflected by the Contract attached as an exhibit to this Motion. This determination takes into account the cost of the Termination Fee when considering the value of the competing bid. Accordingly, should the Trustee select a Qualified Bidder other than DSM as the Winning Bidder, the sale of the Property will yield to the Debtors' bankruptcy estates a net value of the least the amount of the Stalking Horse Bid. This result will yield a direct benefit to the Trustee as a result of the floor set by the Stalking Horse Bid.

40.    Nonetheless, bidding incentives such as the Termination Fee are generally not enforceable if they stifle, as opposed to foster, bidding. Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources), 147 B.R. 650, 660 (S.D.N.Y. 1992). As is customary, DSM required the Termination Fee as a condition to its expenditure of the considerable time and expense to negotiate and agree to the Contract and deal with various other matters related to the sale process in connection with these Chapter 11 cases. The Trustee believes that the Termination Fee has encouraged and will encourage bidding on the Property by serving at least three useful functions: (1) attracting DSM and inducing it to make the Stalking Horse Bid, the initial bid on the Property, which establishes a bid standard for other bidders to follow; (2) inducing DSM to adhere to its bid after the Court orders the Auction; and (3) attracting other potential bidders.

41.    In view of the foregoing, the Trustee submits that the Termination Fee is reasonably calculated to compensate the contribution of DSM to the sale of the Property and the related risks and expenses it has incurred and will continue to incur as part of this effort, which the Trustee considers to be actual, necessary costs of administering the Debtors'

20

bankruptcy estates. Given the Purchase Price, the Trustee, in his business judgment, believes the Termination Fee is both necessary and appropriate under the circumstances.

42.     For these reasons, and given the benefits conferred on the Debtors' bankruptcy estates by DSM's entry into the Contract, the Trustee respectfully requests that the Court approve the payment of the Termination Fee by the Trustee.

**Waiver of Bankruptcy Rule 6004(h)**

43.     To successfully implement the foregoing, the Trustee seeks a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). Pursuant to Bankruptcy Rule 6004(h), unless the court orders otherwise, all orders authorizing the sale of property pursuant to Section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order. Fed. R. Bankr. P. 6004(h). The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. See Advisory Committee Notes to Fed R. Bankr. P. 6004(h).

44.     Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, Collier on Bankruptcy suggests that the fourteen-day period should be eliminated to allow the sale or other transaction to close immediately "where there has been no objection to the procedure." 10 *Collier on Bankruptcy* 6004.09. Furthermore, Collier on Bankruptcy provides that if an objection is filed and overruled, and the objecting party informs the Court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal. Id.

45.     The Trustee has every expectation that he will choose to close this sale as soon as possible after all closing conditions have been met or waived. Accordingly, the Trustee respectfully requests that the Court waive the fourteen-day stay period under Bankruptcy Rule 6004(h).

{W2361671.3}

**Exemption of Sale from Taxes**

46.     Section 1146(a) of the Bankruptcy Code provides that "[t]he issuance, transfer, or exchange of a security, or the making or delivery of an instrument or transfer under a plan confirmed under Section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax." 11 U.S.C. § 1146(a). "Section 1146(a) affords a stamp-tax exemption only to transfers made pursuant to a Chapter 11 plan that has been confirmed." Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33, 52-53 (2008); In re NVR, LP, 189 F.3d 442, 458 (4th Cir. 1999) (holding that § 1146(a) "appl[ies] only to transfers under the Plan occurring after the date of confirmation").

47.     As stated above, the Plan was confirmed by the Court on October 26, 2010. The Plan contemplated the orderly liquidation of the Debtors' remaining assets, including the Property that is the subject of this Motion, by the Trustee in order to maximize the return to the Debtors' bankruptcy estates and their creditors.  Accordingly, the proposed sale of the Property is a fundamental aspect of the liquidation contemplated by the Plan and is occurring after the Debtors obtained confirmation of such Plan.  Accordingly, the sale of the Property should be exempt from stamp, transfer, sales, recording or any other similar taxes under Section 1146(a) of the Bankruptcy Code.  Piccadilly, 554 U.S. at 52 (citing NVR, 189 F.3d at 458 ("If a debtor is able to develop a Chapter 11 reorganization and obtain confirmation, then the debtor is to be afforded relief from certain taxation to facilitate the implementation of the reorganization plan.")).

48.     Pursuant to Local Rule 6004-1(b)(iv)(I), the specific taxes from which the sale of the Property is exempted, pursuant to Section 1146(a) of the Bankruptcy Code are the transfer tax on the Deed (as defined in the Contract) with respect to the sale of the Real Property.

{W2361671.3}

WHEREFORE, the Trustee respectfully requests based on the foregoing that this Court set a hearing on the Bid Procedures, including DSM's proposed Termination Fee, the overbid percentage and notice procedures set forth in the Motion on May 24, 2011 (with an objection deadline of May 23, 2011, at Noon EDT). The Trustee also requests that the Court enter an order, substantially in the form of the Bid Procedures Order, attached hereto as Exhibit B; (i) approving the Bid Procedures, including DSM's proposed Termination Fee, the overbid percentage and notice procedures set forth in the Motion, including the timeline and deadlines set forth herein; (ii) approving the Notice of Auction and Sale Hearing, attached hereto as Exhibit C; (iii) requiring Qualified Bids to be submitted by June 23, 2011; and (iv) authorizing an Auction of the Property to take place on June 27, 2011. The Trustee further requests that the Court enter a separate sale order, substantially in the form of the Sale Order, attached hereto as Exhibit D, (a) approving the terms of the form of Contract between the Trustee and DSM, or the Winning Bidder (if not DSM); (b) authorizing the sale of the Property to DSM or the Winning Bidder (if not DSM), with such sale being free and clear of any and all liens, claims, interests and encumbrances, with any and all such liens, claims, interests and encumbrances attaching to the sale proceeds in the same order of priority and with the same validity as in the underlying Property pursuant to Section 363 of the Bankruptcy Code, and with such sale being subject to higher and better offers, and with Section 363(m) and 363(n) and otherwise applicable findings of good faith being made in favor of DSM or the Winning Bidder; (c) waiving the fourteen-day stay period provided by Bankruptcy Rule 6004(h); (d) finding that the sale of the Property is exempt from any applicable stamp tax or similar tax in accordance with Section 1146(a) of the Bankruptcy Code; (e) finding that neither DSM (nor the Winning Bidder, if not DSM) nor the Trustee has engaged in any conduct that

{W2361671.3}

would cause or permit the Contract to be avoided pursuant to Section 363(n) of the

Bankruptcy Code; and (f) granting such other and further relief as is just and proper.

Dated: May 16, 2011

RESPECTFULLY SUBMITTED,

*/s/ Charles J. Brown, III*
Charles J. Brown III, Esq. (No. 3368)
Archer & Greiner, P.C.
300 Delaware Avenue
Suite 1370
Wilmington, DE 19801
T: (302) 777-4350
F: (302) 777-4352
cbrown@archerlaw.com

-and-

Gayle Ehrlich, Esq. (pro hac vice)
Pierce Atwood LLP
100 Summer Street
Suite 2250
Boston, MA 02110
T: (617) 488-8135
F: (617) 824-2020
gehrlich@pierceatwood.com

ATTORNEYS FOR ROBERT L FRANKLIN,
in his capacity as Liquidating Trustee

{W2361671.3}