# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re ) | Chapter 11 |
| ) | |
| GLOBAL ENERGY HOLDINGS GROUP, ) | Case No. 09-14192 (PJW) |
| INC., *et al.*, ) | |
| ) | (Jointly Administered) |
| Debtors. ) | |

**ORDER: 1) APPROVING BID PROCEDURES, BREAK-UP FEE, OVERBID PERCENTAGE IN ADVANCE OF AUCTION FOR SALE OF AUGUSTA REAL PROPERTY AND RELATED ASSETS; 2) SETTING A FINAL HEARING FOR APPROVAL OF THE SALE; AND 3) APPROVING MANNER AND FORM OF NOTICE OF SALE**

This matter having come before the Court on the Liquidating Trustee's Motion for Orders: (I) Approving Bid Procedures, Break-Up Fee, Overbid Percentage in Advance of Auction for Sale of Augusta Real Property and Related Assets; (II) Setting a Final Hearing for Approval of the Sale; (III) Approving Manner and Form of Notice of Sale; (IV) Approving the Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests; (V) Making Section 363(m) and 363(n) Findings in Favor of Purchaser; (VI) Waiving Fourteen-Day Stay Period Provided by Bankruptcy Rule 6004(h); (VII) Finding Sale Exempt from Stamp Tax and Similar Taxes; and (VIII) Granting Related Relief (the "Motion").[1] The Court, after listening to the evidence and argument of counsel, and based upon the record in these cases, makes the following mixed findings of fact and conclusions of law.

FOUND, This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under

---

[1] To the extent undefined herein all capitalized terms shall have the meaning ascribed in the Motion.

{W2361668.3}

28 U.S.C. § 157(b)(2)(A), (M), (N) and (O). The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a), 363, 1129, 1141, and 1146; Fed. R. Bankr. P. 6004; and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware.

FOUND, Due and proper notice of the hearing having been given regarding the hearing on and the objection period relating to the portion of the Motion addressing the bid procedures, break-up fee, overbid percentage, notice in advance of auction and setting a final hearing for approval of the sale (collectively the "Preliminary Relief"), the Motion and notice of hearing thereon having been served on: (1) the Office of the United States Trustee for the District of Delaware; (2) all known entities who assert liens, claims, encumbrances, or other interests against the Property; (3) the members of the Post-Confirmation Committee appointed pursuant to the Plan; and (4) all persons who have filed appearances requesting notice of hearing.

FOUND, A reasonable opportunity to object or be heard regarding the relief requested in the Motion in regard to the Preliminary Relief has been afforded to all interested persons.

FOUND, The Preliminary Relief is necessary and appropriate to assist in the liquidation of the assets of the Liquidating Trust and is in the best interests of the Liquidating Trust and the Class I Beneficiaries.

FOUND, the Trustee has diligently marketed and continues to diligently market the Property for sale, and prior thereto, the Debtors diligently marketed the Property for sale.

FOUND, the Trustee has shown good and sufficient business reasons for the Preliminary Relief requested in the Motion and has exercised prudent and reasonable business judgment with respect thereto.

FOUND, the Trustee, together with DSM, has formulated a proposed Contract for the Purchase and Sale of Real and Personal Property (the "Contract").

FOUND, the Termination Fee (as defined hereinafter) acted as a necessary inducement for DSM to make the Stalking Horse Bid for the Property, as reflected in the Contract, and the Termination Fee is necessary to preserve that bid in the event the Auction for the Property is conducted.

FOUND, the objections, if any, to the Preliminary Relief requested in the Motion have been overruled or resolved by the relevant parties.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1. The Preliminary Relief is granted in all respects.

2. All objections to the Preliminary Relief that have not been withdrawn, waived or settled, and all reservations of rights included therein, are overruled on the merits.

3. The Contract is hereby approved as attached to the Motion as Exhibit A and the Trustee is authorized to proceed with the Contract as part of the Bid Procedures.

4. In accordance with Section 5 of the Contract, the Trustee proposed that the Court approve and the Court hereby approves the following specific bidding procedures (the "Bid Procedures"), as further described below:

(1)   *Potential Bidder.* Parties interested in participating in the bidding process (each person other than DSM, a "Potential Bidder") will be required to deliver to the Trustee (to the extent not already delivered) the following prior to the commencement of due diligence and/or participation in the Auction:

    (a)   An executed confidentiality agreement in form and substance acceptable to the Trustee; and

    (b)   The most current financial information evidencing the Potential Bidder's ability to close the transaction on or before July 1, 2011, and that otherwise meets with the Trustee's satisfaction (the "Financial Information").

(2)   As promptly as practical after a Potential Bidder delivers the above information, the Potential Bidder shall be eligible to commence due diligence with respect to the Property as defined in the Contract. The Trustee reserves the right to refuse any Potential Bidder access to the due diligence if such access is deemed to be harmful to the Property.

(3)   *Deadline for Submission of Bids.* The deadline for submitting any and all competing bids for the Property shall be **on or before June 23, 2011, at 5:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline").

(4)   *Submission of Bids.* In order to qualify as a Qualified Bidder (as herein defined) of the Property, a Potential Bidder must timely submit to the Trustee a written bid (a "Qualified Bid") for the Property that contains:

    (a)   An executed Contract for the Sale and Purchase of Real and Personal Property in substantially the same form as the Contract with all modifications which shall be no less favorable than those set forth in the Contract (a "Modified Contract").

    (b)   The Modified Contract shall be accompanied by a blacklined copy of the Modified Contract showing all changes made to the Contract.

        (i)   The Modified Contract shall not contain:

            (A)   A request for any type of break-up fee, expense reimbursement, or similar type of payment; or

            (B)   Any due diligence, financing contingencies, or

4

other contingency of any kind.

(c) Evidence of authorization and approval from such Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the Contract or the Modified Contract, as the case may be.

(d) Information regarding such Potential Bidder's financial capability to timely consummate the transactions contemplated by the Modified Contract, containing such financial and other information that will allow the Trustee to make a reasonable determination as to the Potential Bidder's financial and other capabilities to timely consummate the transactions contemplated by the Modified Contract, as the case may be, including, without limitations:

    (i) The most current Financial Information of such Potential Bidder; or

    (ii) If the Potential Bidder is an entity formed for the purpose of acquiring the Property, then:

        (A) The Financial Information of the equity holder(s) of the Potential Bidder or such other form of financial disclosure acceptable to the Trustee;

        (B) The written commitment of such equity holder(s) to be responsible for the Potential Bidder's obligations in connection with the acquisition of the Property; and

        (C) Full disclosure to the Trustee of the identity of each entity that will be bidding for the Property or otherwise participating in connection with the Qualified Bid, and the complete terms of any such participation.

(e) A bid in an amount of at least $2,675,000 cash (which represents 5% above the current Stalking Horse Bid) payable in full at the closing, on or before July 1, 2011;

(f) A cash deposit (the "Deposit") in an amount equal to at least $267,500.00, to be received by the Bid Deadline; and

5

{W2361668.3}

(g) The Modified Contract shall be delivered such that it is received by the Bid Deadline (5:00 p.m. prevailing Eastern Time, on June 23, 2011) by the Trustee's counsel, Attn: Gayle P. Ehrlich, Pierce Atwood LLP, 100 Summer Street, Suite 2250, Boston, MA 02110, email: gehrlich@pierceatwood.com, fax: (617) 824-2020.

(5) *Qualification of Bid.* After a Potential Bidder has delivered a bid, the Trustee will determine whether such Potential Bidder is a "Qualified Bidder" and such bid is a "Qualified Bid." Promptly after making such determination, the Trustee will advise such Potential Bidder of this determination. DSM is deemed a Qualified Bidder.

(6) *Auction.* In the event that one or more Qualified Bids are timely received, the Trustee will conduct an auction (the "Auction") to determine the highest and best cash bid for the Property, beginning at **Noon (prevailing Eastern Time) on June 27, 2011**, at the law offices of Archer & Greiner, P.C., 300 Delaware Avenue, Suite 1370, Wilmington, Delaware 19801. The Auction may be adjourned by announcement of the adjournment of the Auction to those parties who appear at the Auction. The bid by DSM shall constitute the Stalking Horse Bid at the Auction. Each Qualified Bid other than the Stalking Horse Bid is referred to as a "Subsequent Bid". If the Trustee does not receive any Qualified Bids other than the Stalking Horse Bid, then the Trustee will sell the Property to DSM pursuant to the Contract.

(7) *Auction Procedures.* In the event an Auction is necessary, such Auction will be conducted as follows:

(a) Only the Trustee and any Qualified Bidder who has timely submitted a Qualified Bid (and the legal, business, and financial advisers to each of the foregoing) may attend the Auction, and only Qualified Bidders (and authorized representatives of the foregoing) may make Subsequent Bids at the Auction.

(a) At least one (1) business day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Trustee whether it intends to participate in the Auction. Failure to comply with this provision may preclude an otherwise Qualified Bidder from attending and/or participating in the Auction.

(b) All Qualified Bidders who have submitted a Qualified Bid shall be entitled to be present for all Subsequent Bids, with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each of the Subsequent Bids will, upon

6

        request, be fully disclosed to all other bidders throughout the entire Auction.

(c)     All Qualified Bidders or their representatives shall agree to remain ready, willing, and able to close the transaction under the terms of its last Qualified Bid.

(d)     The Trustee may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bid Procedures, the Bankruptcy Code, or any order entered in connection herewith.

(e)     Bidding at the Auction shall begin with the Stalking Horse Bid, followed by any and all other Qualified Bids received by the Trustee. All subsequent bidding at the Auction shall be in minimum increments of at least $50,000.00 higher than the highest previous bid or bids. The Auction shall continue in one or more rounds of bidding and shall conclude after the point in time when each participating bidder has had the opportunity to submit one or more additional Subsequent Bids with full knowledge of the then-existing highest bid or bids.

(8)     *Determination of Winning Bid.* At the conclusion of the Auction, the Trustee shall determine the winning bidder (the "Winning Bidder"). In determining the Winning Bidder, the value of any Qualified Bid shall be determined by comparing, among other things (i) the type, number and nature of changes to the Contract by each such Qualified Bidder, (ii) the extent to which such modifications are likely to delay the closing of the sale of the Property, (iii) the likelihood of the Qualified Bidder's ability to close the transaction (including consideration of the Qualified Bidder's financial wherewithal), (iv) the type and amount of consideration to be received by the Debtors' estates, and (v) the net benefit to the Liquidating Trust.

(9)     In the event that a Qualified Bidder other than DSM is the Winning Bidder, then DSM shall receive payment from the Trustee of a break-up fee on the date the sale is consummated from the proceeds of such sale, in an amount equal to the lesser of: (x) five percent (5%) of the Purchase Price (as defined in the Contract) and (y) all actual out-of-pocket costs and expenses paid or incurred by DSM in connection with its execution of and entry into the Contract and its proposed acquisition of the Property, including,

7

{W2361668.3}

(10) *Final Hearing.* To the extent that a final hearing is required to consider the sale of the Property, the Court will schedule a hearing to approve the transaction (the "Final Sale Hearing") on June 28, 2011 at Noon (prevailing Eastern Time). All objections to the transaction shall be filed with the Bankruptcy Court and served on all necessary persons on or before June 23, 2011 at 5:00pm.

without limitation, (i) attorneys' fees and disbursements in connection with the negotiation and execution of the Contract, the examination of title to the Property, and any other legal matter undertaken by or on behalf of DSM pertaining to the Property, and (ii) any examinations, investigations, tests and inspections, undertaken by or on behalf of DSM with respect to the Property (the "Termination Fee").

(11) *Closing.* Unless otherwise agreed to in writing by the Trustee, the Closing shall take place on **July 1, at 11:00 a.m. (prevailing Eastern Time)** at the offices of Randall D. Quintrell, P.C., 999 Peachtree Street, NE, 23rd Floor, Atlanta, Georgia 30309-3996 (the "Closing Date").

(12) *Return of Deposits.* The Deposits of all Qualified Bidders, including DSM, shall be held in a non-interest-bearing escrow account. Notwithstanding the foregoing, the Deposit, if any, submitted by the Winning Bidder shall be applied against the payment of the purchase price upon closing of the transaction. Except as otherwise provided in the Contract or Modified Contract and herein, all Deposits shall be returned to each Qualified Bidder not selected by the Trustee as the Winning Bidder within five (5) business days after the Final Sale Hearing.

**Summary of Timeline**

5.  The following timeline for hearings and deadlines to effectuate the transaction contemplated in the Contract are set as follows:

| Date | Activity/Deadline |
|---|---|
| June 23, 2011 | Qualified bid deadline |

8

{W2361668.3}

| | |
|---|---|
| June 27, 2011 | Auction |
| June 28, 2011 | Final Sale Hearing |
| | Objections due June 23, 2011 at 5:00 p.m. EST |
| On or before July 1, 2011 | Closing on transaction |

**Notice**

6. Within three (3) business days after the entry of this Bid Procedures Order and in no event later than May 27, 2011, the Trustee shall serve (except with respect to those parties receiving electronic notice in the Debtors' bankruptcy cases) the Sale Notice, substantially in the form annexed hereto as <u>Exhibit A</u> on the following entities: (1) the Office of the United States Trustee for the District of Delaware; (2) all entities known to have expressed a bona fide interest in acquiring the Property; (as defined in the Motion); (3) all known entities who assert liens, claims, encumbrances, or other interests against the Property; (4) the members of the Post-Confirmation Committee appointed pursuant to the Plan; (5) all persons who have filed appearances requesting notice of hearing; (6) all creditors of the Debtors; and (7) each of the thirty-one largest manufacturing employers in Augusta, Georgia. As set forth in the Notice of Sale of the Property, which is attached hereto as <u>Exhibit A</u>, persons desiring to object to this Motion must file with the Bankruptcy Court and serve upon the Trustee's counsel an objection no later than June 23, 2011 at 5:00 p.m. If timely objections are received, the Court will hear the objections at the Final Sale Hearing. Service pursuant to Bankruptcy Rules 6004(a), 6004(c), and 9014 on those parties not receiving electronic notice shall be filed by first-class mail

addressed to the business address of such persons. Pursuant to Bankruptcy Rule 2002, service of the Sale Notice described herein shall constitute good and sufficient notice of the Bid Procedures (including the Contract), the Auction, this Bid Procedures Order, the Motion, and the Final Sale Hearing (and any proceedings to be held thereon or related thereto) on all known and unknown creditors and parties-in-interest. The form of Sale Notice is hereby approved.

7. Objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules and orders of this Court, and shall set forth: (i) the nature of the objector's claims against or interests in the Liquidating Trust; (ii) the basis for the objection; (iii) the specific grounds therefor; and (iv) all evidence in support of said objection, and shall be filed and served so as to be received on or before June 23, 2011, by (a) the Trustee and his counsel, (b) the United States Trustee, and (c) all parties requesting service of notice and other motions and pleadings in these chapter 11 proceedings. Any person that does not comply with this paragraph shall not be heard at the Final Sale Hearing.

8. The Termination Fee for DSM is approved in all respects, and the Trustee is authorized and directed to pay the Termination Fee to DSM from the proceeds of the sale of the Property on the day such sale is consummated in the event that a Qualified Bidder other than DSM is the Winning Bidder for the Property.

Dated:_____

THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE